Case in our call this morning. Agenda number 12 case number 106461. In re Estate of Grace Ellis deceased Shriners Hospital for Children versus James G. Ballman. Counsel can be able to proceed when the courtroom settles down a little bit. Counsel can be able to proceed when the courtroom settles down a little bit. Good morning Mr. Chief Justice, good morning members of the court, good morning Mr. Peck. My name is Wayne Lofthouse, I represent Shriners Hospitals for Children. Also in court this morning is my son Andrew Lofthouse who also represented the hospitals on this appeal. This case involves the relationship between a tort claim for intentional interference with an expectancy and the probate code six month limitation to bring a will contest. The statutory reference for the six month probate claim is 755 ILCS 58 slash 1. More particularly and as the issue was framed by the appellate court, the issue is whether the six month jurisdictional limitation contained in the probate code applies to the tort claim for intentional interference with expectancy. The trial court and the appellate court both concluded that the jurisdictional limitation contained in the statute was controlling and dismissed the Shriners three count complaint two in a nature of will contest and one, the one that's before this court today, the intentional interference of an expectancy with prejudice. The case also involves this court's decision of Robinson versus First State Bank of Monticello. That case was relied on by both the appellate court and the trial court for sustaining those decisions. We believe, however, that that case, a careful reading of that case, sustains the hospital's positions in their claim. In 1964, Grace Ellis executed her will naming the Shriners Hospitals as a contingent beneficiary of her trust, of her will, I'm sorry. Throughout these proceedings, the hospitals have maintained that the cause of action against Reverend Baumann was for the tort action of intentional interference of an expectancy. This claim is an individual claim directed against the conduct of Reverend Baumann as set forth in count three of the petition. This tort was first recognized by the First District Appellate Court in 1981 in the case of Namath versus Banhaumi. Since that case, the case has been, the tort has been recognized in other appellate court cases, and only by this court in the Robinson decision. Hence, the Robinson decision is the sole source of authority interpreting the tort action. In the instant case, the hospitals did not learn of their interest in Grace Ellis' estate until summer of 2006. The hospitals were informed by the heirs of Grace Ellis of their interest in the 1964 will. Counsel, are you saying that, alleging that Baumann fraudulently concealed the prior will from you? Correct. And there's a count in the petition which sets forth that in terms of his concealment, not only from the hospitals, but from the other heirs. Because we didn't know about this until the Ellis heirs came to us and said, you're named in a 64 will, which we just learned about. And in fact, that will was used to discourage the Ellis' from proceeding with their claim. And we suggest that that was part of the underlying scheme. The Baumann was filed in the probate court in March 2006, and yet you waited until August 2006 before you filed the will contest. You had enough time to come within the statute if you had filed right away. Is your notice from the other heirs the reason why you delayed? Now, Your Honor, my understanding of the facts is that Mr. Baumann, Grace Ellis died on, I believe it was October 8th of 2003. On October 9th of 2003, he's filed the will, and that will was ended on October 28th, 2003. We did not learn of our interest in this until summer of 2006. So hence, we had no knowledge of the two-plus years that that estate was pending. And we believe that to be a significant consideration by the court as for these particular facts patterns. Going back to the... There are no discovery-type rules in the probate act, is that correct? Well, in Illinois, I could not find any. There are other states, however, which do have a discovery rule. I believe Pennsylvania and the Ninth Circuit, an apparent attempt to remedy this disconnect, where they do say if there was no way you had notice or the notice of the estate was hindered from you, that you can, within six months, file your will contest. And, in fact, that's one of the reasons why, in this particular case, I made sure I filed the hospital's claim within the six-month period. Now, obviously, two-and-a-half-plus years is not six months. The fact that the legislature did not see fit to put any type of discovery rules within the probate act, wouldn't that kind of support the appellate court's point regarding the quick and efficient administration of states? Well, that's not the point as it relates to the conduct of Mr. Baumann. The tort is directed towards his individual conduct as a tortfeasor. The fact that the probate act applies to probate proceedings and wills is a disconnect from the individual tort action against Mr. Baumann, or Reverend Baumann, I should say. I apologize. Counsel, what's the difference in proof of these claims, will contest versus the tort? Well, fundamentally, the tort action is an in personam action against a tortfeasor. The will action is more in the nature of an in rem action. In terms of the tort action, the second restatement just tells us that when one receives property by way of coercion, duress, fraud, undue influence, he should not be allowed to hold that property to the detriment of the rightful owner. Now, taking it a step further, in terms of the elements, the hospitals would have to prove that that conduct occurred, that they had an expectancy, and in this case, the 1964 will, and that but for that wrongful conduct, they would have received the benefit of the 64 will. The hospitals recognize that as their obligation and would proceed on that. But in this case, what occurred is the appellate court and the trial court issued a blanket rule. Six months had gone by and you can't bring your claim. Effectively, what occurred was that the appellate court and the trial court eliminated a potential remedy for the hospitals and all other similarly situated parties. In order to recover, would you have to, in effect, have a successful contest of the 1999 will, in effect showing that Baughman did, or that the testator was unduly influenced or coerced or something, so that that will becomes invalid? I think that might be a two-part question. Certainly, if you could do that, you would establish that element. But I think if you also show that but for his actions in causing that will to be, the 99 will, wherein he takes everything, you would still sustain your burden because it was the tortious conduct that caused you not to get the bequest. I think what's happening here is we're getting too wound up in terms of the strict constraints of the probate code eliminating a remedy. I don't know if I answered your question. Let me take it a little farther to see if I understand. You're saying that maybe he influenced her, but not unduly, to make a new will. But by making the new will, it cut Shriners out because the new will superseded the old. And the new will could still stand. And you could still proceed under your... No, not at all. We would have to show that his conduct caused the 99 will in which he benefited was wrongful. So that will would have to be set aside. As a practical matter, probably correct. But you're too late to get that done. I guess you would acknowledge that under the probate act. Under the probate act, the six months are gone necessarily. Another question, just a point of information. You're saying that, of course, the 1964 will named Shriners as a beneficiary. In the event the 1999 will had been set aside, does that automatically allow for probate of the 1964 will? No, we'd have to go through the probate rules of submitting that. And the ironic thing in this particular case is that that particular will was brought to our attention by the LSAers who would take by intestate succession. But we would have to do that. Counsel, what are the damages that the hospital is seeking? Is it what was transferred in the estate? Or is it those inter vivos transfers? Or all of them, or part of them, or what? Well, we're seeking both the assets that would be remaining in the probate estate. We're seeking the assets that were transferred by way of a power of attorney prior to Ms. Ellis' death. And we're seeking the assets that were likewise transferred by inter vivos transfers, whether they be joint tenancy or pay on death accounts. Because obviously all of those assets would have remained in her probate estate and would have gone to the hospitals pursuant to the 1964 will. Now, again, I recognize that those proof problems would be required, but at least the hospital should have an opportunity to have their day in court regarding those. Is it your position that even if you were barred from claiming any damages as a result of the probate proceedings, that there still would be a cause of action for these other transfers? In this particular case, because we have a charity and the entity is not an heir, we have a different set of circumstances, which creates further problems in the analysis of this case. The hospitals only take by reason of Grace Ellis' generosity in her 1964 will. So derivatively, in order for the hospitals to take, we have to take through that will. Whether it be nonprobate property or the probate property. Opposing that would be an error. An error would just take by intestacy. But as to your question regarding the hospitals, we would have to take through the 1964 will. But you don't think that's a way to end run the probate act? No, because the claim, again, the underlying claim, is the personam action against Reverend Bauman for his conduct. It's not an end run around the probate act. There was ultimately a settlement between the heirs and Reverend Bauman, right? Those were other heirs. What happened in the case is... Would that settlement be impacted at all by, if you're allowed to proceed? I suppose in a very technical sense it could be, because that settlement was prior to any involvement, and obviously the hospitals had no awareness of it. I'm not sure this, my question, is important to our disposition in this case, but because the will seems so intertwined, the statute pertaining to will contests and what you're arguing, but of course there's several ways to revoke the 1964 will. One is by the new will, and if that will is found invalid, then I suppose the 1964 will is not revoked. The other would be by tearing off the signature or by destroying the will. I presume the 1964 will is still intact someplace. Well, Your Honor, that's absolutely correct, and in fact the facts of this case point out another very interesting issue. The 1964 will was not filed with the Cook County Probate Court until after the Ellis heirs brought their lawsuit. And the 64 will, which was the original will, still intact, was filed with the Probate Court, and counsel for Reverend Baumann informed the Ellis heirs that there is no sense proceeding with your case, because if you win, the property goes to the Shriners. So that leads just to another issue, which is probably a policy issue. It isn't necessarily an end run around the Probate Court. I think there has to be, and I think this is true of other cases, there is a conflict between, okay, what relief can you get in the Probate Court, and what is the orderly administration of the Probate Court, versus how we are going to protect wrong parties and heirs when torturous conduct occurs. The Appellate Court in this case said six months, you didn't file your claim, whether you had notice or not doesn't mean anything. The Probate Act says. Taking it a step further, assuming that the torturous conduct occurs, and I know this is inadvertent, but we actually have in that instance, the Probate Court being a vehicle for the fraud. And I don't think as a policy consideration, that's the appropriate rule of law. As we continue to study this, is it accurate to say that the tort action here was a collateral attack on the order admitting the 1999 will to probate? From our view, that was a red herring from the beginning. And it's a red herring now. Because it's not a collateral attack. I've used that expression myself, but it really doesn't convey much to me at the moment. Your Honor, it's not a collateral attack. It certainly had a negative effect on the will that was admitted to probate, didn't it? Or wouldn't it? Well, if the tort was recognized, it has the potentiality to have a negative effect on that will. If the hospitals can sustain their burden. One of the things we have to do is concern ourselves with the impacts of our decision. And I guess the question here is, and the Appellate Court seemed to recognize it, is what effect are we going to have upon the orderly movement of property through probate? Your Honor is absolutely correct that there is a policy decision to be made along those lines. What effect would affording a remedy to an agreed party have on the orderly administration of estates? Whatever, quote, unquote, orderly may mean. The wishes of the decedent should be considered. And I don't think we should sacrifice the rights of people that have legitimate claims under the guise of it's the orderly administration of the estate. I guess the follow-up question is, if we set aside the time bar here, what will happen in the future with other cases? What will, what remedy, what vehicles will be made available to disrupt the operation of the probate court? How your opponent might phrase it. I think if we use Robinson and a couple of the other Appellate Court decisions that were cited, but if we look at them for the purpose of preserving the order of the probate court and also to also make this remedy available, we have some guidance. We have no quarrel with the notion that if you're an interested party in an estate, you're an heir, you have knowledge of it, the probate proceedings are pending, they're to adjudicate property rights, you should bring your claim in those probate proceedings. What we're speaking to, though, is if you have probate proceedings and the probate proceedings are questionable, and there's an issue of tortious conduct, and you have no notice, you shouldn't be foreclosed on the remedy. So all parties, the sky would not fall if all parties who are affected, which is the vast majority of cases, because either they know they're in the will, they know the person died, they are heirs, they should bring their claim within that time if a probate proceeding is initiated. But to have that blanket rule preventing other individuals and charities that are harmed, I just think is the wrong policy. Is it your position Robinson wouldn't have to be overruled because there's the specific statement that it's limited to the facts? Robinson is entirely fact-driven in my mind. And we have no quarrel with Robinson. They recognized the tort. And that was the true sense of there wasn't another bite of the apple, unlike the allegations against the hospitals here. We never had a single bite of the apple. Robinson makes sense to us. We don't quarrel with it. They recognized the tort, and they said, but if you have the remedy available to you, take it. That will be my time. Thank you. May it please the Court. Mr. Chief Justice, members of the Illinois Supreme Court, good morning. My name is Kerry Peck. I represent the executor and heir of the estate, Mr. Baumann. Let me clarify right from the inception of my comments that the administration of this estate complied completely with the contents of the Illinois Probate Act, lock, stock, and barrel. Let me also point out to the Court that contrary to the statements of counsel, in the trial court they did not allege concealment of any kind. In the appellate court they put in one sentence in their argument, in their briefs. And now this is the argument that evolves up to the Supreme Court, in which for the first time they allege some inappropriate administrative error in conjunction with the administration of this estate. An issue before this Court is really, as suggested by the Chief Justice, the orderly administration of probate estates. The Shriners Hospital has suggested in its briefs that tortious interference proponents be given the opportunity to extend the statute to five years subsequent to the admission of the will to probate. Now envision that if the Shriners position was adopted, what chaos would occur in the administration of estates if individuals who allege that they were tortiously interfered with an expectancy were given five years. Let me just get a question out of the way. Tortious interference, does that invalidate the will if they are successful? It certainly has to. It certainly has to. And in the case at hand of it as a money judgment against a tortfeasor. So whether or not the will needs to be invalidated or not, in effect it is. But this is seeking a money judgment against the department. But in order to have standing to seek that money judgment, they have to collaterally attack the will that's been admitted to probate. And that's why you're applying the statute of limitation on the Probate Act? Yes. If they're seeking money judgment, is that the right statute to apply? That's why it's here, because they blew the statute. It's here because they blew the statute, but also of great consequence is in their appeal, they also did not appeal the dismissal of their will contest cases, of their will contest counts. They filed a three-count complaint. Two of them will contest, undue influence, lack of capacity. And the third, the tortious interference. All three were dismissed with prejudice. They did not appeal the first two. In order to have standing to take under the 64 will, they would have to overturn the 99 will. They decided not to do that. And that's our position. And I agree with you. The case is here because the six-month statute has been upheld by the appellate court and been upheld by the trial court. I guess my question really is should the six-month statute really apply in this case when they're seeking money damages against Mr. Baumann? Well, if it doesn't apply, then the question is under what circumstances would the tortious interference case be allowed to proceed? Counsel has cited for the first time in the Supreme Court briefs a scenario in which they've now cited Florida cases to the court. In the Florida case that they cite in which the tortious interference count was allowed to proceed, the circumstances and the facts are staggeringly different. In the case in which a tortious interference count was allowed to proceed, the circumstances were the following. A decedent dies. He is, excuse me, she leaves one heir, her brother. Under her prior will, her brother was to inherit. While the decedent was basically ill and on her deathbed, a caregiver unduly influences that decedent to rewrite the will and leave assets to the caregiver. Caregiver probates the estate, takes the money, and after the estate is over, notifies the decedent's brother, sole heir and prior legatee of the existence of the will and that her brother died. Those are egregious facts. Those are egregious scenarios. That's a totally different scenario. In this scenario, you know, lest there be any confusion, there is no requirement that any prior will of a decedent be filed. There is certainly amongst probate practitioners, some lawyers file, some lawyers don't file. In this instance, my predecessor counsel chose to file wills that they had located at the time they located. So this appellant was not entitled under the Probate Act to receive notice other than the publication notice. If we decide that this was a tort, then we would have to reverse the basis for finding in the appellate court. I believe you would, yes. And if this court chose to extend the law to allow a count for tortious interference to stand prospectively, as counsel suggests by citing the Florida cases, then perhaps this court could recognize egregious circumstances that did not occur here to allow those types of cases to exist. They cite a Florida Supreme Court case in which the Florida Supreme Court case concluded that the tort count should not proceed, but lays out facts that allow egregious behavior in which cases could proceed. In this case, they concede, and it's very, very important, they concede, and we denote in our briefs and I can cite them to you, they concede they were not entitled to mail notice, they concede that publication notice occurred, and they concede that they did not allege prior concealment. In the transcript before Judge Kennedy, he says, I never said secreted wills. Today, the argument has evolved to the point of an allegation being made that in some fashion, Reverend Baumann secreted wills. That's just not the case. But they do allege that he defrauded by his conduct, don't they? I'm sorry, Your Honor. Don't they allege that he defrauded by his conduct? They allege in the tortious interference count that he unduly influenced the decedent, which virtually, as the appellate court said in its decision, is the same proof that would be necessary in an undue influence count, which they did not appeal. But nevertheless, the proof's going to be the same. How can anyone assert that an individual committed a tortious interference without asserting undue influence? And the appellate court went through line by line, count by count, allegation by allegation, denoting the similarities in the undue influence count, which was dismissed with prejudice, an appeal that they did not take, and the similarities in the tortious interference count, which asserts basically that he unduly influenced an individual to do the following. Keeping with Justice Freeman's line of questions, though, if we were to look at this tort as independent, I understand what you're saying, that Shriners really has to get back to the 64 will to be entitled to anything. But why couldn't there be a trial within a trial just indicating if there was undue influence, if that second will wasn't valid, not really invalidating the will, and then if so found, money damages could be assessed against the undue influencer? Well, I would respectfully suggest that our Illinois precedent would conclude that it's a collateral attack upon the prior admission of the will to probate. And I understand that your suggestion is a stand-alone tort case, and a stand-alone tort case might apply in an egregious set of circumstances in the facts that I've laid out in which the Florida courts recognize it. But those facts don't exist here. And a stand-alone tort case in this kind of scenario is exclusively going to rely on the allegations of undue influence. Mr. Peck, you're saying this is an invalid collateral attack on the 1999 will, but it has the same basis as the undue influence and mental incapacity as the claim in the will contest, and they haven't appealed that. Wouldn't that leave the law in Illinois or the probate law in Illinois standing upside down if they're allowed collateral attacks all the time? Yes, Your Honor, precisely it would. On the same basis? Precisely it would. And as I suggested earlier, the Shriners have suggested that we extend the statute five years. They've used the default provision of the statute of limitations basically to ask this court to, the statute runs in probate from the date letters of office issued to an executor. They're suggesting that the statute for tortious interference be extended five years from the date of letters of office. That in and of itself would prevent the disposition of property, it would prevent the orderly closing of estates, and it would prevent heirs, legatees, and creditors from knowing where they stand. But if it was a stand-alone case, they'd be within statutory limits, right, in bringing this action? If it wasn't, it seems to me it's a very unusual circumstance here in that there's been a settlement on that 99 will with cousins, I believe, that have no reason for wanting that will to be invalidated, because if it goes back to the 64 will, they get zero. I would suspect that you don't disagree with Mr. Lofthouse that maybe that settlement occurred in that case because they really shouldn't have, they had nothing to gain by a lawsuit that got them back to the 64 will. So back to the independent stand-alone lawsuit for tortious interference, and again this trial on a trial idea, not even, just showing that that will shouldn't have been without, no one really wants it invalidated if they could get money damages for it. If they could prove that, you know, Reverend Baumann did something wrong, I know he contests that he did anything wrong, would they be in a stand-alone torts, putting it separate and apart from a will contest, would they be timely in bringing a tortious interference action? I think that the answer is probably dependent upon the interpretation of the statute. I mean, as the courts are aware, most torts are filed within two years. In that scenario, this scenario, they're asking that, you know, it be extended to the five years. But again, I understand the concept of suggesting a stand-alone tort, but with all due respect, I would say that that stand-alone tort should only be extended and allowed in egregious circumstances, and there are no egregious circumstances here.  All existing probate act statutes and requirements have been met in the administration of this estate. There was no discovery. Maybe egregious facts, if this were considered a tort, could be discovered. Well, what's interesting about this case is it has various phases. The settlement that Justice Thomas refers to occurred actually prior to both Mr. Lofthouse and I getting involved in this case. There is pending a will contest case by other of the Ellis heirs, and then the Shriners has filed its tortious case. The discovery that occurred in the pending will contest case, and I denoted it in the brief, is, you know, the treating physician indicated there was no undue influence, no lack of capacity. The drafting lawyer indicated no undue influence, no lack of capacity. And another attorney, who used to play bridge with the decedent every day for many, many years, indicated no undue influence or lack of capacity. So there's been no discovery in the claim that Shriners argues before you today, but there's been some discovery in certainly the pending collateral case that is proceeding. Mr. Peck, what is the collateral proceeding? Well, there is, as we speak right now, before the probate court, Judge Kennedy presiding in the Circuit Court of Cook County, a will contest case filed by certain of the Ellis relatives. But there's no separate proceeding by Shriners, is there? No. The only proceeding by Shriners is now the proceeding before this court, having been dismissed with prejudice by the trial court and having been affirmed by the appellate court. Well, let me ask you this to follow up on Justice Freeman and Justice Thomas on the stand-alone theory. What elements of the tort of intentional interference would require the same elements of proof that would take place in a will contest? I don't mean in a collateral way. I mean direct proof. Well, the elements of the tortious interference basically assert that the client unduly influenced someone to presumably transfer their assets. So in large measure, it's going to be an undue influence case. And the appellate court laid out side-by-side the allegations made in the undue influence count filed by Shriners and in the tortious interference count filed by Shriners, and the proof is virtually the same. So it's going to be, did Reverend Bauman unduly influence the deceit? But lack of capacity would not be a separate element in the tort, would it? I think that it's probably not going to be a separate element, but certainly the proof is going to go to that. Typically, you know, the undue influence scenarios arise in conjunction with allegations in which the allegation is made the individual is susceptible to pressure due to illness. So there will be certainly an intertwining of lack of capacity and undue influence. Mr. Peck, just back to that collateral issue, the will contest in front of Judge Kennedy. Yes. What happens if they prevail, the heirs prevail on that contest? Does it look like it would go back to the 64 will at that point? I mean, is there a chance the 99 will is going to be invalidated anyway? Well, based upon the discovery that I've been involved in, I don't see that happening at all because of the three witnesses, the drafting lawyer, the treating physician, and another lawyer who was closer to the deceit. So everything that's come out so far, but I guess theoretically it would go back to the 64 if they prevailed, right? Theoretically, certainly that could happen, but to my knowledge at the moment there's no evidence that would indicate anything indicating any undue influence, any lack of capacity, or any wrongdoing. I'm just wondering about, you know, the two Shriners would then be back in because they were certainly in the 64 will. They were. And I'm just thinking, you know, out loud here as you mentioned that, whether or not there was any, if it's problematic having the tortious interference on one track, in this other case, although there are not parties to it, they certainly would benefit if they prevailed, if the errors prevailed. I agree. You know, real practically what we're talking about is if the tort case is allowed to proceed in a standalone, we've then got to start over discovery in the tort case, and we're pretty far along in the will contest case in discovery. That's basically where we're at. I see the yellow light. In closing, let me say that, you know, we believe that the orderly administration of probate estates is imperative. It's a public policy issue. The legislature has recognized it. The courts have recognized it. The appellate court recognized it in upholding Judge Kennedy's decision in this case. Equally clear is that there is a public policy to allow tortious interference cases to proceed in which, as the Florida courts have recognized, the circumstances are egregious. In this case, as I've indicated earlier, all probate act requirements have been met. There was no requirement. There exists no requirement as we stand here today to file the prior wills of the decedent. And because that prior will was filed and because Shriners got notice, the allegation that appears in their briefs today for the first time of concealment was never raised at the lower court level. And, in fact, they conceded there was no concealment. So we have, as I've indicated earlier, an evolving scenario in which I think what happened was they found Florida cases to support the proposition in the outrageous set of facts that I previously related and are trying to see if we can fit the facts and shoehorn those in a scenario that is just not the same. So with all due respect, and I would respectfully ask this court to affirm the appellate court, which previously affirmed the trial court, and dismiss with prejudice the pending tort-feasor count. Thank you very much. Mr. Loftus, is there any way to intervene in the collateral case in front of Judge Kennedy? We did attempt to do that, and my recollection is that the court did not rule on that pending the resolution of this issue from this court. As a matter of fact, the Ellis heirs attempted to make us a party defendant in those proceedings, and Judge Kennedy deferred ruling on that. So I suppose that's in limbo. I mean, I guess we just stumbled upon this, but the elements are not the same ultimate determinations of fact, which would have you prevail on a tortious interference count, will be assessed in that Wilcott test case, right? Well, I'm not sure they're necessarily the same, and I'm not sure that necessarily the proofs would come in the same. They're certainly similar, though. Well, sure. I mean, even without you in it, the heirs prevail. You win, right? Correct. If the 64 will is the will that's the one being assessed, I mean, Shriners was certainly entitled to some monies at that point. Exactly, and the reason we're here is because of the heirs. Can you explain that? Well, I think the heirs wanted Grace Ellis' estate to go where she wanted it to go. And despite counsel's comments as to these circumstances are not egregious, we certainly feel they are egregious. And if we just look at the allegations contained in count three, they stand for themselves. This was dismissed on motion. This was dismissed on a jurisdictional issue that six months went by, we were not there, there's the door. And I think the allegations have to be taken as true. You agree, though, you didn't have a right to notice under the Probate Act, is that right? Under the Probate Act, we did not have a right to notice. How did you acquire notice? From the Ellis heirs. Normally? No, counsel for the Ellis heirs contacted us saying that Reverend Baumann has now produced a 1964 will in which the hospitals are named and we want you to know about it. Then within six months of learning of our interests through the 64 will, we filed our complaint. And our petition for the tortious interference. The Mr. Lofthouse under the Probate Act, is there a duty to lodge that 1964 will? No, there isn't. Counsel's comments, although technically, ultimately, Reverend Baumann did comply with the Probate Act, it took a number of years for him to comply with it. And it took two orders by Judge Budzinski to have him comply with in terms of giving heirs notice. And the record will reflect this. Publication in the Chicago Daily Law Bulletin is fine when you can't find the heirs, but when you know where the heirs are, you should use due diligence to find them. And this is what Judge Budzinski ordered them to do. Now, we have two sets of heirs. We have another set of heirs now on the paternal side that are pending in the Circuit Court of Cook County on another will contest. So to suggest that this scheme was not egregious is somewhat hollow from the way we're looking at the case. One other question. Is the contest by the other Ellis heirs, has there been an issue raised about that claim being time barred? No. And it was recently filed because they never gave them notice. And the Probate Act does allow an heir to file within six months once they are notified. Unfortunately, the hospitals do not share that same benefit. I have to comment on the Florida case. Those facts may have been egregious, but that wasn't the point of citing that case. The point of citing that case was it's the same principle involved in that case as this one. Under Florida law, the other heir was not entitled to notice. But yet the Florida Appellate Court said, even though you're not entitled to notice, we're going to allow you to have your day in court. They didn't elevate. The Florida court didn't elevate the orderly administration of the states and the six-month time rule above a principle of affording relief to an aggrieved party. I think Justice Friedman, I think, hit on this. The other issue is there's still no reason why Reverend Baumann should not be held accountable for his conduct, no matter in a broad sense what happens with the will, because what we're talking about is really principles of unjust enrichment. If you obtain property that you rightfully should not have, then principles of unjust enrichment should say, no, that belongs over here. That's all we're saying. Admittedly, we have to prove all that. But to elevate this six-month jurisdictional limitation on a claimant strikes us as just the wrong policy. Another matter of consideration is, in recent years... What would happen, Mr. Lawfus, if the will contest proceeds, the tortious interference count, if we allow that to proceed, and that gets into the proof stage, and the will contest has already been decided in one fashion. No undue influence, as it appears that, from what Mr. Peck has said, seems to be the way it's going, at least with the discovery that's been taken to date. And now you're trying to... You have a trial within a trial having to prove this undue influence to prevail on your tortious interference count. How would that work out? Well, first of all, I want to be clear as to Mr. Peck's comments as to what's happened in this other discovery that we weren't necessarily a party of. And obviously that's outside of this record and outside of the matter that we're bringing before the court. But in answer to your question, I don't see why the judge couldn't handle the trial in the same fashion, much like, you know, a medical or a legal malpractice case where you prove a case within a case. The court could say, okay, what are the issues that relate to the tort claim that you're seeking and what are the issues that the heirs are seeking, and just deal with those in an orderly fashion perhaps than the first part of the trial. Well, I'm not talking about the practicalities. I think that's a good analogy, a legal malpractice case. I'm talking about if a ruling comes down from the probate court indicating that the heirs did not prevail, that there was no undue influence, that the 99 will stands, and you're proceeding on this trial within a trial where you're trying to show why the 99 will should not stand, trying to come up with proof that is similar to what has gone on in the probate court. Is that problematic at all, that there would be two different findings? I don't know if there would. I suppose there is the potential for that. In this particular case, of course, everything is on hold, but I would suspect that that would just have to be dealt with as a trial matter. I don't have the answer to that other than that. I think the proof would probably come in pretty similarly, though. I see that my time is about out. I also feel that when we look at what's happening in our state recently in terms of what the legislature is doing and passing protections for the elderly and ensuring that people are protected, and especially when they get older, I think it's important for the court to consider those policy decisions there and deciding whether or not we're going to shut the door to claimants such as the hospitals for egregious conduct and preventing them from receiving their interest in the states which they rightfully belong to them. Thank you, Counselor. Case number 106461 in the estate of Grace Ellis will be taken under advisory.